# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| Rebecca K. Wilson, Dennis Houtz, James Dunn, Robert Wong, Kenneth Wong, Mike Hampshire, Lions Fan, LLC, Linda Saenz, and Abby Creek Investments, LLC,<br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>5 Choices, LLC, American Cash Funding, LLC, BuyPD, LLC, DLS Properties, LLC, EZ Street Properties, LLC, FrontSide Properties, LLC, Green Apple Homes, LLC, Insiders Cash, LLC, Malibu Breeze Properties, LLC, Max Ultra, LLC, Patriot Homes, LLC, Property Direct, LLC, Ready Prop, Red List Homes, LLC, Screaming Eagle Properties, LLC, and Silver Ties Homes, LLC, Investors Financial Education, LLC, Yancey Events, LLC, and various John Does,<br>　　　　　Defendants. | Case No. 2:16-cv-10659-RHC-MKM<br><br>Honorable Robert H. Cleland<br><br>Magistrate Judge Mona K. Majzoub |

## PROPERTY DEFENDANTS' RULE 12(b) MOTION TO DISMISS AND TO ENFORCE SETTLEMENT AGREEMENTS

Pursuant to Rules 12(b)(2), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure, and E. D. Mich. LR 7.1(d), Defendants 5 Choices, LLC; American Cash Funding, LLC; BuyPD, LLC;  DLS Properties, LLC; EZ Street Properties, LLC; FrontSide Properties, LLC; Green Apple Homes, LLC; Insiders Cash, LLC;

Malibu Breeze Properties, LLC; Max Ultra, LLC; Patriot Homes, LLC; Property Direct, LLC; Ready Prop; Red List Homes, LLC; Screaming Eagle Properties, LLC; and Silver Ties Homes, LLC (collectively, the "**Property Defendants**") respectfully move this Court to dismiss Plaintiffs' Complaint.

First, this Court should dismiss this action with prejudice and order specific performance of the multiple settlement and release agreements between the Parties. Second, in the alternative, this Court should dismiss this action and order specific performance of the venue and choice of law provisions between the Parties. Third, in the alternative, this Court should dismiss this action for Plaintiffs' failure to plead fraud with particularity under Rule 9(b).

Pursuant to Local Rule 7.1, there was a conference between attorneys in which the movant explained the nature of the motion and its legal basis and requested but did not obtain concurrence in the relief sought.

Respectfully submitted,

Dated: April 4, 2016       By:  */s/Michael G. Brady*
                                Michael G. Brady (P57331)
                                Jeena S. Patel (P70175)
                                WARNER NORCROSS & JUDD LLP
                                2000 Town Center, Suite 2700
                                Southfield, Michigan 48075
                                (248) 784-5000
                                mbrady@wnj.com
                                jpatel@wnj.com

                                Bill Knowlton (not admitted)
                                Invictus Law, P.C.
                                360 South Technology Court, Suite 200
                                Lindon, Utah 84042
                                801-854-9212
                                bill@invictuspc.com

                                *Attorneys for Property Defendants*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| Rebecca K. Wilson, Dennis Houtz, James Dunn, Robert Wong, Kenneth Wong, Mike Hampshire, Lions Fan, LLC, Linda Saenz, and Abby Creek Investments, LLC,<br>     Plaintiffs,<br><br>   v.<br><br>5 Choices, LLC, American Cash Funding, LLC, BuyPD, LLC, DLS Properties, LLC, EZ Street Properties, LLC, FrontSide Properties, LLC, Green Apple Homes, LLC, Insiders Cash, LLC, Malibu Breeze Properties, LLC, Max Ultra, LLC, Patriot Homes, LLC, Property Direct, LLC, Ready Prop, Red List Homes, LLC, Screaming Eagle Properties, LLC, and Silver Ties Homes, LLC, Investors Financial Education, LLC, Yancey Events, LLC, and various John Does,<br>     Defendants. | Case No. 2:16-cv-10659-RHC-MKM<br><br>Honorable Robert H. Cleland<br><br>Magistrate Judge Mona K. Majzoub |

## PROPERTY DEFENDANTS' BRIEF IN SUPPORT OF THEIR RULE 12(b) MOTION TO DISMISS AND TO ENFORCE SETTLEMENT AGREEMENTS

## <u>ISSUES PRESENTED</u>

1.    Whether this Court should dismiss Plaintiffs' claims in this action for a lack of jurisdiction because of the multiple settlement and release agreements between the Parties?

      Defendants answer "Yes."

2.    Whether the Court should issue an Order dismissing this action and order specific performance of the venue and choice of law provisions existing in the agreements between the Parties?

      Defendants answer "Yes."

3.    Whether the claims asserted by Plaintiffs should be dismissed because Plaintiffs have failed to plead their fraud claims with particularity?

      Defendants answer "Yes."

# CONTROLLING OR MOST APPROPRIATE AUTHORITIES

## Cases

### Federal Cases

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) ...................................11, 12

*Bassett v. NCAA*, 528 F.3d 426 (6th Cir. 2008)......................................................12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................11

*Bowater N. Am. Corp. v. Murray Mach.*, 773 F.2d 71 (6th Cir. 1985)...................18

*Brock v. Scheuner Corp.*, 841 F.2d 151 (6th Cir. 1988) .........................................18

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ..........................................19

*Commercial Money Ctr., Inc. v. Illinois Union Ins. Co*. 508 F.3d 327 (6th Cir. 2007)........................................................................................................................12

*Cook v. Zions First Nat. Bank*, 645 F.Supp.423 (D. Utah 1986)............................23

*Elsheick v. Select Portfolio Servicing, Inc.*, 566 F.Appx. 492 (6th Cir. 2014) .......23

*Fed. Deposit Ins. Corp. v. Fedorov*, 2010 WL 2944569 (E.D. Mich., July 22, 2010) ...........................................................................................................................16

*Goodmansen v. Liberty Vending Sys., Inc.*, 866 P.2d 581(Utah App. 1993) ..........16

*In Re Trade Partners Inc.*, 627 F.Supp.2d 772 (W.D. Mich. 2008) .......................19

*John Call Engg, Inc. v. Manti City Corp.* ...............................................................22

*K.S. v. Detroit Pub. Sch.*, 2:14-CV-12214 (E.D. Mich. 2015) ...............................18

*Kuhlman v. TDP Capital Access, LLC*, 2010 WL 2793565, at *3 (Mich. Ct. App., July 15, 2010, No. 291348) ..................................................................................20

*Larsen v. Pine Ridge Operator, LLC*, No. 14-cv-12101, 2014 WL 6686777.........22

*Mascaro v. Davis*, 741 P.2d 938, 942 (Utah 1987)...........................................15, 16

*Masco Cabinetry, LLC v. Savvy Homes, LLC*, Case No.: 2:15-cv-10462 (E.D. Mich. 2015) .........................................................................................................19

*Omne Fin., Inc. v. Shacks, Inc.*, 596 N.W.2d 591, 595 (Mich. 1999)) ...................19

*Sackler v. Savin*, 897 P.2d 1217, 1220 (Utah 1995.................................................16

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ...............................................................11

*Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989) ...11

*Tatten v. Bank of Am. Corp.*, 912 F.Supp.2d 1032 (D. Colo. 2012).......................23

*Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991)...............................10

*Turcheck v. Amerifund Fin., Inc.*, 272 Mich.App. 341, 345, 725 N.W.2d 684 (2006) ..........................................................................................................19, 20, 21

*United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 509 (6th Cir. 2007)............................................................................................................23

*United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 921 (4th Cir. 2003)...........................................................................................23

*United States v. Corinthian Colls.*, 655 F.3d 984, 998 (9th Cir. 2011) .................24

*Watts v. Polaczyk*, 242 Mich.App. 600, 604, 619 NW.2d 714, 717 (Mich. App. 2000).......................................................................................................21, 22

## **<u>Court Rules</u>**

E.D. Mich. LR 7.1(d)…………………………………………………………...1

Fed. R. Civ. P. 9(b)...………………………………………….........2, 23, 24

Fed. R. Civ. P. 12(b)(2)…………………………………………………..1,10

Fed. R. Civ. P. 12(b)(6)……………………………………………...11, 19, 20

## **<u>Rules of Professional Conduct</u>**

Mich. R. Prof. Cond. 7.3(a). …………………………………………………9

# **TABLE OF CONTENTS**

ISSUES PRESENTED ......................................... ii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ........................... iii

I.    INTRODUCTION ......................................... 1

II.   FACTS ......................................... 2

III.  STANDARD OF REVIEW. ......................................10

IV.   ARGUMENT ......................................12

    a. Existing Settlement Agreements Between the Parties ..................................12

    b. Valid Forum-Selection Clauses and Choice-of-Law Provisions for Utah.....18

    c. Failure to Read the Contract is no Defense to its Enforcement ...................21

    d. Failure to Plead Fraud With Particularity Requires Dismissal.....................23

V.    CONCLUSION ......................................25

I.      **INTRODUCTION.**

Defendants 5 Choices, LLC; American Cash Funding, LLC; BuyPD, LLC; DLS Properties, LLC; EZ Street Properties, LLC; FrontSide Properties, LLC; Green Apple Homes, LLC; Insiders Cash, LLC; Malibu Breeze Properties, LLC; Max Ultra, LLC; Patriot Homes, LLC; Property Direct, LLC; Ready Prop; Red List Homes, LLC; Screaming Eagle Properties, LLC; and Silver Ties Homes, LLC (collectively, the "**Property Defendants**") are in the business of buying and selling investment real estate across the country.  During 2013 and 2014, Property Defendants sold investment real estate properties to many of the Plaintiffs located in various states, including: Alabama, Indiana, Michigan, Missouri, Ohio, and Wisconsin.  Plaintiff Wilson, the sole party residing in Michigan, has not purchased any real property from the Property Defendants, nor has she alleged such in the Complaint.  As she has made no allegations that implicate the Property Defendants, this Court should dismiss all of Wilson's claims against the Property Defendants pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction.

Excluding Wilson, all Plaintiffs reside (or are domiciled) outside the State of Michigan: Houtz in Pennsylvania; R. Wong and K. Wong in New York; Hampshire, Lion's Fan, LLC, Saenz, and Abby Creek Investments, LLC in Texas; and Dunn in Georgia (collectively, the "**Property Plaintiffs**").  Also, as alleged in

the Complaint, the Property Defendants all reside outside the State of Michigan. Further, to the extent that some Property Plaintiffs purchased real property from Property Defendants in Michigan, many of the properties are located in Alabama, Indiana, Missouri, Ohio, and Wisconsin.  It appears the only reason this case was filed in Michigan federal court is because Plaintiffs' legal counsel lives in Grosse Pointe, Michigan.

This matter should be dismissed with prejudice – as the majority of Property Plaintiffs and Property Defendants have entered multiple settlement agreements with each other – promising a full release of all claims and disputes, as well as any claims they may later discover.   Furthermore, the dispute between Property Plaintiffs and Property Defendants has no place in Michigan – as all parties have previously agreed, in writing, to Utah as being the appropriate venue and choice of law to govern all disputes between them. Finally, the crux of the Property Plaintiffs' Complaint revolves around the allegation of fraud.  However, Plaintiffs have failed to plead fraud with particularity as required by Rule 9(b).

## II.  **FACTS**

This Motion is based on the following facts:

Plaintiff **R. Wong** purchased property located at 11808 Rossiter, Detroit, MI, and 2724 Central Avenue, Anderson, IN, and both purchase contracts contain the following provision:

> GOVERNING LAW AND JURISDICTION: This contract shall be governed by the laws of the State of Utah.  Jurisdiction shall lie exclusively with the courts within the State of Utah.

R. Wong Real Estate Purchase and Sale Agreement. True and correct copies of all relevant Purchase and Sale Agreements (the "REPC's") for the Property Plaintiffs are attached here as Exhibit A.

Plaintiff **K. Wong** purchased property located at 22020 Cushing, Eastpointe, MI, and the purchase contract contains the following provision:

> GOVERNING LAW AND JURISDICTION: This contract shall be governed by the laws of the State of Utah.  Jurisdiction shall lie exclusively with the courts within the State of Utah.

Id. at K. Wong REPC.

Plaintiff **Lions Fan, LLC**, purchased the following properties: 17681 Lenore, Detroit, MI; 13591 Riverview St, Detroit, MI; 10031 Fielding St, Detroit, MI; 12053 Laing St, Detroit, MI; 18740 Glenhurst St, Detroit, MI; 20519 Rosemont Ave, Detroit MI; 7666 Vaughn St, Detroit, MI; 18500 Dequindre St, Detroit, MI; 6906 Longacre St, Detroit, MI; 17511 Westmoreland Rd, Detroit MI; 6906 Pierson St, Detroit, MI; 3435 Wasmund Ave, Warren, MI; 19960 Kenosha St, Harper Woods, MI; 15324 Semrau, Eastpointe, MI; 11036 Packard Ave, Warren, MI; 22126 Hayes Ave, Eastpointe, MI; 2152 Otis Ave, Warren, MI; 22809 Rein Ave, Eastpointe, MI; 23106 Lambrecht Ave, Eastpointe, MI; 5877 Buck St, Taylor, MI; 4186 N Toronto, Milwaukee, WI; 3803 Wayne Ave, Kansas

City, MO; 909 Maurice Ave, Ferguson, MO; 6912 E 114th St, Kansas City, MO; 153 Bascom Dr, Ferguson, MO; and 2352 Gardner Dr, Saint Louis, MO, and all the purchase contracts contain the following provision:

> GOVERNING LAW AND JURISDICTION: This contract shall be governed by the laws of the State of Utah.  Jurisdiction shall lie exclusively with the courts within the State of Utah.

*Id.* at Lions Fan, LLC REPCs.

Plaintiff **Abby Creek Investments, LLC**, purchased the following properties: 21920 Elroy Ave, Warren, MI, and 2901 49th Way, Birmingham, AL, and both purchase contracts contain the following provision:

> GOVERNING LAW AND JURISDICTION: This contract shall be governed by the laws of the State of Utah.  Jurisdiction shall lie exclusively with the courts within the State of Utah.

*Id.* at Abby Creek Investments, LLC REPCs.

Plaintiff **James Dunn** purchased the following properties:  8030 Studebaker, Warren, MI, and 2001 Woodlawn, Middletown, OH, and both purchase contracts contain the following provision:

> GOVERNING LAW AND JURISDICTION: This contract shall be governed by the laws of the State of Utah.  Jurisdiction shall lie exclusively with the courts within the State of Utah

*Id.* at James Dunn REPCs.

Regarding the settlement of a prior property dispute, Plaintiff **Houtz** signed a Settlement and Release Agreement on November 15, 2013, and the two operative provisions of this agreement are as follows:

> In consideration of the above concession amount (the "Consideration") provided by Company to Customer, Customer hereby accepts this consideration and provides a full release of claims against the Company. Customer agrees to waive any claims that they may have or that they may hereafter discover. This release is not an admission of liability by either Party. Customer further understands that they are releasing any claims to any additional monies from the Company that they may have. Customer agrees not to initiate any type of additional action against the Company, whether by charge back or otherwise.

> This Agreement shall be interpreted under the substantive and internal laws of the state of Utah, without reference to the conflict of law principals. Each party agrees to personal jurisdiction in any action brought in any court, Federal or State, within the County of Utah, State of Utah having subject matter jurisdiction over this Agreement.

Houtz Settlement and Release Agreement. True and correct copies of all relevant Settlement and Release Agreements (the "**Settlements**") for the Property Plaintiffs are attached here as Exhibit B.

Regarding the settlement of a prior property dispute, Plaintiff **Dunn** signed a Release of Funds to Client Agreement on October 23, 2014, and the two operative provisions of this agreement are as follows:

> In exchange for the consideration provided by Company to Client, Client hereby accepts this consideration and provides a full release of claims against the Company. Client agrees to waive any claims that they may have or that they may hereafter discover. This release is not an admission of liability by either Party. Client further understands

5

that they are releasing any claims to any additional monies from the Company that they may have. Customer agrees not to initiate any type of additional action against the Company, whether by charge back or otherwise.

This Agreement shall be interpreted under the laws of the state of Utah.

*Id.* at Dunn Release of Funds.

Regarding the settlement of a prior property dispute, Plaintiff **Dunn** signed a Settlement and Release Agreement on May 5, 2015, June 5, 2014, and January 23, 2015, and the two operative provisions of these agreements are as follows:

In consideration of the above concession amount (the "Consideration") provided by Company to Customer, Customer hereby accepts this consideration and provides a full release of claims against the Company. Customer agrees to waive any claims that they may have or that they may hereafter discover. This release is not an admission of liability by either Party. Customer further understands that they are releasing any claims to any additional monies from the Company that they may have. Customer agrees not to initiate any type of additional action against the Company, whether by charge back or otherwise.

This Agreement shall be interpreted under the substantive and internal laws of the state of Utah, without reference to the conflict of law principals. Each party agrees to personal jurisdiction in any action brought in any court, Federal or State, within the County of Utah, State of Utah having subject matter jurisdiction over this Agreement.

*Id.* at Dunn Settlement and Release Agreement.

Regarding the settlement of a prior property dispute, Plaintiff **Wong** signed a Release of Funds to Client Agreement on September 22, 2014, and the two operative provisions of these agreements are as follows:

> In exchange for the consideration provided by Company to Client, Client hereby accepts this consideration and provides a full release of claims against the Company. Client agrees to waive any claims that they may have or that they may hereafter discover. This release is not an admission of liability by either Party. Client further understands that they are releasing any claims to any additional monies from the Company that they may have. Customer agrees not to initiate any type of additional action against the Company, whether by charge back or otherwise.
>
> This Agreement shall be interpreted under the laws of the state of Utah.

*Id.* at Wong Release of Funds.

Regarding the settlement of a prior property dispute, Plaintiff **Hampshire** signed Settlement and Release Agreements on July 28, 2014 (two), and the two operative provisions of these agreements are as follows:

> In consideration of the above concession amount (the "Consideration") provided by Company to Customer, Customer hereby accepts this consideration and provides a full release of claims against the Company. Customer agrees to waive any claims that they may have or that they may hereafter discover. This release is not an admission of liability by either Party. Customer further understands that they are releasing any claims to any additional monies from the Company that they may have. Customer agrees not to initiate any type of additional action against the Company, whether by charge back or otherwise.
>
> This Agreement shall be interpreted under the substantive and internal laws of the state of Utah, without reference to the conflict of law principals. Each party agrees to personal jurisdiction in any action brought in any court, Federal or State, within the County of Utah, State of Utah having subject matter jurisdiction over this Agreement.

*Id.* at Hampshire Settlement Agreement.

7

Regarding the settlement of prior property disputes, Plaintiff **Hampshire** signed Release of Funds to Client Agreement on August 20, 2014 (two); September 5, 2014 (three); September 29, 2014; October 20, 2014; November 5, 2014 (three); December 10, 2014; February 9, 2015 (two); February 24, 2014; March 27, 2014 (three); March 30, 2014 (two); April 13, 2015; June 17, 2015; July 15, 2015; August 24, 2015; September 9, 2015; September 16, 2015; and the two operative provisions of these agreements are as follows:

> In exchange for the consideration provided by Company to Client, Client hereby accepts this consideration and provides a full release of claims against the Company. Client agrees to waive any claims that they may have or that they may hereafter discover. This release is not an admission of liability by either Party. Client further understands that they are releasing any claims to any additional monies from the Company that they may have. Customer agrees not to initiate any type of additional action against the Company, whether by charge back or otherwise.

> This Agreement shall be interpreted under the laws of the state of Utah.

*Id.* at Hampshire Release of Funds.

Regarding the settlement of a prior property dispute, Plaintiff **Hampshire** signed a Settlement Agreement and Release on September 18, 2015, and the two operative provision of this agreement is as follow:

> Upon the payment identified above, Customer acquits and forever discharges the Company, its predecessors, successors, officers, shareholders, members, administrators, assigns, and any and all other persons or entities in any way related to it, of and from any and all claims, demands, causes of actions, damages, losses, costs, expenses, fees, obligations, and liabilities of every nature whatsoever, whether

8

known or unknown, which Customer now has or may in the future discover, which are or may be based in whole or in part upon any fact or circumstance, whether based on contract, tort, statute, equity, property law or otherwise, resulting directly or indirectly from the Parties' interactions. This release is not an admission of liability by either Party. Customer further understands that they are releasing any claims to any additional monies from the Company that they may have. Customer also specifically releases any and all claims they may have against any third-party company that provided real estate education, asset protection, or other real estate related services. Customer also hereby waves any and all claims to attorney fees and costs against the Company. Customer agrees not to initiate any type of action or lawsuit against the Company, whether formal or informal, or by charge back or otherwise.

The Parties agree that this Agreement shall be governed by and construed in accordance with the laws of the State of Utah and that the legal venue and jurisdiction for any dispute arising between the Parties related to this Agreement, or any of the prior issues between the Parties, shall reside in the courts of Utah County, Utah.

*Id.* at Hampshire Settlement Agreement.

In April 2015, legal counsel for BuyPD, LLC received five (5) unauthorized attorney solicitation letters from Plaintiffs' legal counsel, Robert Roddis, to many of Property Defendants' real estate buyers. True and correct copies of these solicitations are attached here as <u>Exhibit C</u>. Upon information and belief, Roddis directed these solicitations to the specific recipient real estate buyers in Utah, Nevada, New Mexico (including detailed and specifically tailored legal information about their property addresses and alleged valuations) with whom he had no prior business relationship, nor any prior familial relationship. *Id.*; *see also*, Mich. R. Prof. Cond. 7.3(a). On April 29, 2015, legal counsel for BuyPD, LLC

sent a cease and desist demand letter to Roddis regarding the same.  However, apparently some of the unauthorized solicitation letters reached customers outside of Michigan, who in turn contacted Roddis.

On February 23, 2016, Roddis filed this action in the Eastern District of Michigan on behalf of the Plaintiffs, including the Property Plaintiffs.  *See* Dkt. 1.

All of the Property Plaintiffs reside outside the state of Michigan.  Compl. at ¶ 2 ("Houtz resides in Pennsylvania"); Compl. at ¶ 3 ("Robert Wong resides in New York, New York"); Compl. at ¶ 4 ("Kenneth Wong resides in New York, New York"); Compl. at ¶ 5 ("Hampshire resides in Texas . . . Lions Fan, LLC, a limited lability company organized and existing under the laws of the State of Texas"); Compl. at ¶ 6 ("Plaintiff Linda Saenz resides in Texas . . . Abby Creek Investments, LLC, a limited lability company organized and existing under the laws of the State of Texas"); Compl. at ¶ 7 ("Dunn resides in Georgia").

## III.   <u>STANDARD OF REVIEW</u>.

Federal Rule of Civil Procedure 12(b)(2) authorizes the filing of motions to dismiss for lack of personal jurisdiction. When "[p]resented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews*, 935 F.2d 1454,

1458 (6th Cir.1991) (*citing Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989)). "The court has discretion to select which method it will follow, and will only be reversed for abuse of that discretion." *Id.*

Likewise, Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Plausibility, not sheer possibility or even conceivability, is required to survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 556-557; *Iqbal*, 129 S.Ct. at 1950-1951. In considering a Rule 12(b)(6) motion to dismiss, all well-pleaded facts are to be taken as true, and viewed in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). But, as it is only <u>facts</u> that must be taken as true, the court may "begin by identifying the pleadings that, because they are no more than

conclusions, are not entitled to the assumption of the truth." *Iqbal*, 129 S. Ct. at 1950.[1]

## IV.   <u>**ARGUMENT**</u>.

### a. <u>*Existing Settlement Agreements Between the Parties*</u>.

This case must be dismissed with prejudice, as Property Plaintiffs have signed multiple Settlement Agreements with the Property Defendants promising a full release of all claims.  *See* <u>Ex. B</u>.  Such a release includes the claims asserted in this lawsuit.  Through a preliminary investigation, the following facts have been identified relating to the Property Plaintiffs' own allegations regarding their signed Settlement Agreements.  *See* Compl. at ¶¶ 72-74.  The allegations about signed Settlement Agreements are referred to in Property Plaintiffs Complaint, and thus it is fair and equitable for the court to consider this information in making its determination on Property Defendants' motion to dismiss.  *See Bassett* 528 F.3d at 430; *see also Commercial Money Ctr., Inc.* 508 F.3d at 336.

---

[1] As a general rule, a district court, in ruling on a motion to dismiss, should look only to the allegations of the complaint.  But a document referred to or attached to the pleadings and integral to plaintiff's claims, may also be considered without converting a motion to dismiss into one for summary judgment.  *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).  Also, documents attached to a pleading become part of the pleadings, so the court may consider them on a motion to dismiss.  *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.* 508 F.3d 327, 336 (6th Cir. 2007).

As recited above in the fact section, the following parties have signed Settlement Agreements with the Property Defendants:

- Plaintiff Houtz signed a settlement agreement in 2013, which contains a release, choice of law, and jurisdiction/venue provision. *See* Ex. B;

- Plaintiff Dunn signed multiple agreements in 2014 and 2015, which contain a release, choice of law, and jurisdiction/venue provisions. *Id.*;

- Plaintiff Wong signed a settlement agreement in 2014, which contain release and choice of law provision. *Id.*;

- Plaintiff Hampshire signed multiple agreements in 2014 and 2015, which contain a release, choice of law, and jurisdiction/venue provisions. *Id.*;

Even after a cursory review of these signed Settlement Agreements, there is obvious language that runs counter to Plaintiffs' assertion that they "unwittingly" signed the Settlement Agreements. *Compare* Compl. at ¶72. Frankly, how does one "unwittingly" sign an agreement entitled "Settlement and Release Agreement" without thinking that it is a settlement agreement? What make's Property Plaintiffs' allegations more incredulous is there exist multiple signed copies of the *same* release language by several of Property Plaintiffs, including Houtz, Dunn, and Hampshire. *See* Ex. B.

As stated in detail below, under both Michigan and Utah law, each party has the burden to read and understand a contract they sign. Here, each of the Settlement Agreements cited above is not more than two-pages long (except for Hampshire's Settlement Agreement signed September 18, 2015, which is four-

13

pages long).  *Id.*  Under the agreement section of each Settlement Agreement, there are only three (3) provisions.  *Id.*  A provision for a release; a provision for confidentiality; and a provision for choice-of-law/venue.  Even to a non-lawyer, the language is sufficiently explicit and clear that the parties settled and waived all claims against each other – years prior to the filing of this lawsuit.  Property Plaintiffs cannot credibly argue that they could not read nor understand this provision, especially when they provided a "full release of claims against the [Property Defendants]. Client agrees to waive any claims that they may have or that they may hereafter discover."  *Id.*  Despite these Settlement Agreement, and despite Property Defendants' legal counsel making Plaintiffs' legal counsel aware of this fact weeks ago, Property Plaintiffs refuse to dismiss their claims against the Property Defendants.

While the cited Settlement Agreements vary slightly, the commonality of all of the release language from the Settlement Agreements state the following four (4) core concepts, which are as follows:

(1)    Customer hereby accepts this consideration accepts this consideration and provides a full release of claims against the Company;

(2)    Customer agrees to waive any claims that they may have or that they may hereafter discover;

(3)    Customer further understands that they are releasing any claims to any additional monies from the Company that they may have;

(4) Customer agrees not to initiate any type of additional action against the Company.

The language is not complicated. Moreover, the definition of "Company," as used in the Settlements, includes "Property Direct, LLC, its subsidiaries, affiliates, successors, assigns, and related entities." *Id*. The Property Defendants are included as the affiliates and related entities of Property Direct, LLC. Taking the facts associated with the Property Plaintiffs' allegations, their claims must be denied by their own concession that they have released all claims, waived all claims that they may have, and agreed not to file suit.

Also, Property Plaintiffs' assertion that Settlement Agreements are void as against public policy is unfounded. *See* Compl. at ¶74. As the Settlement Agreements are to be construed under Utah Law, the Supreme Court of Utah has stated precisely the opposite: "It is a basic rule that the law favors the settlement of disputes." *Mascaro v. Davis*, 741 P.2d 938, 942 (Utah 1987). And similarly, their assertion these Settlement Agreements were not supported by any new consideration, *see* Compl. at ¶74 (the Settlement Agreements "are not supported by any new consideration from [Property] Defendants"), is contrary to the explicit language of the Settlement Agreements and Property Plaintiffs' own allegations in the Complaint that funds were provided. *See* Compl. at ¶72.

"Courts generally do not inquire into the adequacy of consideration to support a contract," and even a "cent or a peppercorn, in legal estimation," would

suffice. *Fed. Deposit Ins. Corp. v. Fedorov*, 2010 WL 2944569 at *6 (E.D. Mich., July 22, 2010).   As such, Property Plaintiffs' allegations in this regard are contradictory and are not supported by the law, they must fail as a matter of law.

Additionally, the Settlement Agreements signed by Houtz, Dunn, Wong, and Hampshire have another set of principles in common: namely, the Settlement Agreements are to be interpreted under the substantive and internal laws of the state of Utah.  Others, like the Settlement Agreements signed by Houtz, Dunn, and Hampshire contain an additional provision that, "[e]ach party agrees to personal jurisdiction in any action brought in any court, Federal or State, within the County of Utah, State of Utah having the subject matter over this [Settlement] Agreement." *See* Ex. B.

Under Utah law, "[s]ettlement agreements are governed by the rules applied to general contract actions." *Sackler v. Savin*, 897 P.2d 1217, 1220 (Utah 1995).

> It is a basic rule that the law favors the settlement of disputes. Such agreements under the proper circumstances may be summarily enforced.   However, whether a court should enforce such an agreement does not turn merely on the character of the agreement. An agreement of compromise and settlement constitutes an executory accord. Since an executory accord "constitutes a valid enforceable contract," basic contract principles affect the determination of when a settlement agreement should be so enforced.

*Goodmansen v. Liberty Vending Sys., Inc.*, 866 P.2d 581, 584 (Utah App. 1993) (*quoting Mascaro,* 741 P.2d at 942)). The court in *Goodmansen* further noted that, under Utah law, "Parties have no right to welch on a settlement deal during the

sometimes substantial period between when the deal is struck and when all necessary signatures can be garnered on a stipulation." *Goodmansen*, 866 P.2d at 584-85.

Here, Houtz, Dunn, Wong, and Hampshire signed multiple separate Settlement Agreements.  By virtue of entering these contracts, Property Plaintiffs gave "a full release of all claims" and agreed "to waive any claims that they may have or that they may hereafter discover." Ex. B.  The release and waiver language is unambiguous.  The language is explicit and clear that the Parties settled and waived all claims against each other.  Not only have these parties released and waived all claims against the Property Defendants, but they have also agreed, "not to initiate any type of additional action against the Company." *Id.* The plain language of the Settlement Agreements indicates that they should be interpreted according to Utah law. *Id.* As such, the interpretation of such agreements, in conjunction with the exclusive forum-selection clause and choice of law provision identified above, indicate that Michigan is an improper forum for the present action.

Further, under Michigan law, this Court has the inherent power to enforce the Settlement Agreements.  The legal standard governing the enforcement of settlement agreements in Michigan is clear:

> It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before

them.   A federal court possesses this power "even if that agreement has not been reduced to writing."   Before enforcing settlement, the district court must conclude that agreement has been reached on all material terms.  The court must enforce the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement.

*Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988) (*quoting Bowater N. Am. Corp. v. Murray Mach.*, 773 F.2d 71, 77 (6th Cir. 1985); *see also K.S. v. Detroit Pub. Sch.*, 2:14-CV-12214 (E.D. Mich. 2015) ("enforcement [of settlement agreements] is limited to the parties' agreement; a court 'is not permitted to alter the terms of the agreement.'").  On the one hand, Property Plaintiffs allege that there were Settlement Agreements that were entered into; then, on the other hand, they want to alter the terms of the Settlement Agreements – stating that they are invalid or unenforceable now that they do not like the terms.

The Court should grant Property Defendants' Motion and order specific performance of the Settlement Agreements.

   **b.  <u>Valid Forum-Selection Clauses and Choice-of-Law Provisions for Utah</u>.**

The dispute between the Parties has no place in Michigan federal court – as all parties have previously agreed, in signed writings, to Utah as being the appropriate venue and choice of law to govern all disputes between them.  *See* <u>Ex. A</u>.  Long before Roddis was canvassing the country looking for clients, each of the Property Plaintiffs and Property Defendants entered into the various REPCs, which state:

18

GOVERNING LAW AND JURISDICTION: This contract shall be governed by the laws of the State of Utah. **Jurisdiction shall lie exclusively with the courts within the State of Utah.**

Ex. A.*; see also* Compl. at ¶ 63 (emphasis added, capitalization in original). It is patently clear the parties intended Utah to have exclusive jurisdiction, and be the appropriate venue, for any disputes arising out of these real property transactions. There is no conceivable alternative interpretation of this plainly drafted provision. When analyzing a Rule 12(b)(6) motion to dismiss, the Court must accept the allegation that there exists forum selection clauses between the parties in this action as true.

A party seeking to avoid a forum-selection clause bears a "heavy burden" of proving the clauses are invalid. *Turcheck v. Amerifund Fin., Inc.*, 272 Mich.App. 341, 345, 725 N.W.2d 684 (2006). First, Michigan law "permits parties to contractually agree, in advance, to personal jurisdiction [outside of Michigan]." *Masco Cabinetry, LLC v. Savvy Homes, LLC*, Case No.: 2:15-cv-10462 (E.D. Mich. 2015) (*quoting Omne Fin., Inc. v. Shacks, Inc.*, 596 N.W.2d 591, 595 (Mich. 1999)); *see also In Re Trade Partners Inc.*, 627 F.Supp.2d 772, 778 (W.D. Mich. 2008) (concluding that forum-selection clause satisfied Michigan law with respect to the exercise of personal jurisdiction over nonresident defendant). Second, "[a] freely-negotiated forum-selection provision that is not unreasonable or unjust 'does not offend due process.'" *Id*. at 779 (*quoting Burger King Corp. v. Rudzewicz*, 471

U.S. 462, 473 n. 14 (1985)).  Third, when a forum-selection clause uses mandatory language like "will" or "shall," coupled with a choice of venue, the clause is not permissive – it is mandatory.  *See Kuhlman v. TDP Capital Access, LLC*, 2010 WL 2793565, at *3 (Mich. Ct. App., July 15, 2010, No. 291348).  Finally, "[i]t is undisputed that Michigan's public policy favors the enforcement of contractual forum-selection clauses and choice-of-law provisions."  *Turcheck*, 272 Mich.App. at 345.

Here, as pleaded in the Complaint, Plaintiffs have not met their "heavy burden" of proving the forum selection clauses and choice-of-law provisions in the various REPC's are invalid.  Indeed, under a Rule 12(b)(6) analysis, the Court is required to take Plaintiffs' allegations in the Complaint that the REPC's contain forum selection clauses and choice-of-law provisions as true.  *See* Compl. at ¶ 63 ("all litigation regarding the [REPC's] would be in the courts of Utah").  Plaintiffs attempt to deflect their contractual obligations regarding the forum selection clauses and choice-of-law provisions in the various REPC's by arguing they no longer have "the resources available to litigate these matters in their home state, much less being able [sic] hire attorneys to litigate these matters in Courts in the State of Utah or travel to Utah."  *Id.* at ¶ 64.  However, Plaintiffs' allegation in this regard is illogical.  They have engaged an attorney in Michigan – despite the fact the Property Plaintiffs live in Texas, New York, Pennsylvania, and Georgia.

20

Indeed, no Michigan-based Plaintiff exists as to the Property Defendants. Why would Utah be an inconvenient forum for Plaintiffs based in Texas, Georgia, Pennsylvania, or New York, but Michigan is not? Further, "[a]llowing a party who is [allegedly] disadvantaged by a contractual choice of forum to escape the unfavorable forum-selection provision on the basis of concerns that were within the parties' original contemplations would unduly interfere with the parties' freedom to contract and should generally be avoided." *Turcheck*, 272 Mich.App. at 350 (emphasis added).

The Court must enforce specific performance of the Parties' valid forum selection clauses and choice-of-law provisions in the various REPC's, and dismiss this action in Michigan for the agreed upon venue in Utah.

### c. *Failure to Read the Contract is no Defense to its Enforcement.*

Property Plaintiffs admit the governing law and jurisdictional provision, paragraph 27 to the REPC, was part of their real estate transactions. *See* Compl. at ¶ 63. Yet, confusingly, Property Plaintiffs go on to repeatedly assert they were "unaware" the properties they purchased contain a forum selection and choice of law provision. *See e.g.* Compl. at ¶¶ 208, 380, 438, 480. Michigan courts routinely reject such arguments. For example, in *Watts v. Polaczyk*, 242 Mich.App. 600, 604, 619 NW.2d 714, 717 (Mich. App. 2000), the court rejected the argument stating that "Michigan law presumes that one who signs a written

agreement knows the nature of the instrument so executed and understands its contents.  [M]ere failure to read an agreement is not a defense in an action to enforce the terms of a written agreement."  *Id*.; *see also Larsen v. Pine Ridge Operator, LLC*, No. 14-cv-12101, 2014 WL 6686777, at *3 (E.D. Mich. Nov. 26, 2014) ("[t]he Sixth Circuit has noted that 'one who signs a contract is presumed to know its contents.'")

Here, as a central part of their Complaint, Property Plaintiffs' allegations state that the venue and jurisdictional provisions provide that Utah law and Utah forum were part of the REPCs they signed.  Which is true.  *See* <u>Ex. A</u>.  But, the assertion that they were "unaware" of the provisions runs contrary to Michigan law cited above.  Indeed, the same result is reached under Utah law, as the court in *John Call Engg, Inc. v. Manti City Corp.* explained:

> [E]ach party has the burden to read and understand the terms of a contract before he or she affixes his or her signature to it. A party may not sign a contract and thereafter assert ignorance or failure to read the contract as a defense. This rule is based upon the panoply of contract law upholding the principle that a party is bound by the contract which he or she voluntarily and knowingly signs.

743 P.2d 1205, 1208 (Utah 1987).  Yet in this case, Property Plaintiffs make that argument, *i.e.* they should not be bound by the REPC they signed because they were unaware of a provision – having not read the contract before signing it. Despite these assertions, such an argument fails under both Michigan and Utah

law.  Moreover, the existence of such a clause demands the Property Plaintiffs' claims must be dismissed in Michigan.

### d. *Failure to Plead Fraud With Particularity Requires Dismissal*.

Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Interpreting this requirement, the Sixth Circuit has held that complaints alleging fraud must specify "the time, place, and content of the alleged misrepresentation on which [the plaintiff] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc*., 501 F.3d 493, 509 (6th Cir. 2007); *see also Elsheick v. Select Portfolio Servicing, Inc.*, 566 F.Appx. 492, 498 (6th Cir. 2014).  The public policy behind the requirement of pleading fraud claims with particularity is to protect a party's reputations from the harm attendant to accusations of fraud or dishonest conduct.  *See Tatten v. Bank of Am. Corp*., 912 F.Supp.2d 1032 (D. Colo. 2012); *see also United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 921 (4th Cir. 2003) ("Rule 9(b) protects defendants from harm to their goodwill and reputation").

Pleading fraud with particularity as to one defendant is insufficient to satisfy the pleading requirements for the other defendants.  This particularity requirement is "especially important in cases involving multiple defendants . . . since each

defendant is entitled to know precisely what it is the plaintiff claims he did wrong."
*Cook v. Zions First Nat. Bank*, 645 F.Supp.423, 424-25 (D. Utah 1986).
Moreover, federal courts have held that the particularity requirement of Rule 9(b)
does not allow a plaintiff to merely lump multiple defendants together, but instead,
a plaintiff is required to differentiate her allegations when suing more than one
defendant and inform each defendant separately of the allegations surrounding its
alleged participation in the fraud. *See, generally*, *United States v. Corinthian
Colls.*, 655 F.3d 984, 998 (9th Cir. 2011).

Here, the Plaintiffs' allegations are extraordinarily conclusory regarding the
who, what, when, and where of the alleged fraud – and the causes of action which
rely upon the fraud element – with all Plaintiffs and all Defendants being lumped
into the same non-specific categories. *See, e.g., Compl*. at ¶¶ 32 – 34 ("Defendants
engaged in such violations directly and as co-conspirators . . . [and] arise out of the
same transaction or occurrence or series of transactions or occurrences that form
the basis of the RICO cause of action."). Such allegations fail to rise to the level of
specificity required by case law and the Federal Rules of Civil Procedure. All the
Defendants are jumbled together. The causes of action are not enumerated or
identified; which leave the Property Defendants guessing as to what claims and
causes of action asserted against them. Also, some claims from some Property
Plaintiffs clearly do not apply to all the Property Defendants. It is illogical to

suggest that all of the Property Plaintiffs have all of the same causes of action against all of the same Property Defendants. As such, the Complaint is defective and should be dismissed for the failure to plead fraud with specificity.

## V.    <u>CONCLUSION.</u>

For the foregoing reasons, the Property Plaintiffs' Complaint should be dismissed with prejudice against the Property Defendants.

Respectfully submitted,

Dated: April 4, 2016           By:  */s/Michael G. Brady*
                                    Michael G. Brady (P57331)
                                    Jeena S. Patel (P70175)
                                    WARNER NORCROSS & JUDD LLP
                                    2000 Town Center, Suite 2700
                                    Southfield, Michigan 48075
                                    (248) 784-5000
                                    mbrady@wnj.com
                                    jpatel@wnj.com

                                    Bill Knowlton (not admitted)
                                    Invictus Law, P.C.
                                    360 South Technology Court, Suite 200
                                    Lindon, Utah 84042
                                    801-854-9212
                                    bill@invictuspc.com

                                    *Attorneys for Property Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2016, I electronically filed the Property Defendants' Rule 12(b) Motion to Dismiss and to Enforce Settlement Agreements and its Brief in Support with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record via the Court's ECF system.

Respectfully submitted,
/s/ *Michael G. Brady*
Michael G. Brady (P57331)
WARNER NORCROSS & JUDD LLP
2000 Town Center, Suite 2700
Southfield, MI 48075-1318
248-784-5000
mbrady@wnj.com

1