**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

REBECCA K. WILSON, et al.,

        Plaintiffs,

v.                              Case No. 16-10659

5 CHOICES, LLC, et al.,

        Defendants.

_____/

**ORDER GRANTING PROPERTY DEFENDANTS' MOTION TO
DISMISS AND GRANTING JGI'S MOTION TO DISMISS**

Pending before the court are two motions to dismiss the second amended complaint. The court has already granted motions to dismiss by Defendants American Cash Funding, Income Property USA, LLC, and Insiders Cash, LLC, ("Lending Defendants") (Dkt. #40), as well as a motion by Defendants Insider's Financial Education, LLC, Yancey Events LLC, and Yancey LLC, (Dkt. #41). The motions currently before the court was filed by Defendants 5 Choices, LLC, BuyPD, LLC, DLS Properties, LLC, EZ Street Properties, LLC, Expansion Properties, LLC, FrontSide Properties, LLC, Green Apple Homes, LLC, Improvement Homes, LLC, Interactive Homes, LLC, Malibu Breeze Properties, LLC, Max Ultra, LLC, Patriot Homes, LLC, Property Direct, LLC, Ready Prop, Red Apple Homes, LLC, Red List Homes, LLC, Screaming Eagle Properties, LLC, Scree 44, LLC, Silver Tie Homes, LLC, ("Property Defendants") (Dkt. #43), and by John Graham, Inc. ("JGI") (Dkt. #45). The motions have been fully briefed, and a hearing on Property Defendants' motion was held on June 28, 2017. For the following reasons, the court will grant the motions to dismiss.

# I. BACKGROUND

This court has described the background factual allegations of this case in its previous order. (Dkts. #55.) As with its most recent opinion granting dismissal (See Dkt. #59), the court will not restate the facts again here.

## A. Property Defendants

Property Defendants argue that the court should dismiss the claims of several Plaintiffs (Dennis Houtz, Robert Wong, Mike Hampshire, Lion's Fan LLC, and James Dunn) with prejudice because they signed settlement agreements which included releases for all claims. They contend that still others (Rebecca Wilson, Mike Hamphsire, Linda Saenz, Simone Vohradnik, Ramona Lorraine Solano-Owen, Layne Lundstrom, and Audrey Lundstrom) should be dismissed because they are not alleged to have actually entered into any transactions with Property Defendants on their own behalf. Further, they insist that all Plaintiffs agreed in writing to venue and choice of law provisions identifying Utah as the proper forum. They continue that the provisions are valid and enforceable under Utah law–the state identified in both the purchase and settlement agreements' choice of law and venue provisions–and the court should not permit Plaintiffs to evade enforcement of the terms of a contract merely because they allege that they did not read or understand them. In addition, they assert that Plaintiffs have failed to meet the pleading standard of Federal Rule 9(b), which applies to both the fraud and RICO claims since Plaintiffs are alleging that the RICO organization in this case existed to commit fraud, because Plaintiffs have not delineated exactly what each Defendant did to give rise to the claims. They also argue that Plaintiffs have inadequately

pled their RICO claims by failing to allege specific facts correlating to the requisite elements, and that in any case they should not be permitted to convert a normal commercial dispute into a RICO suit with potentially trebled damages on such scant grounds. Property Defendants request dismissal along with attorney's fees.

Plaintiffs argue that they have met the pleading requirements to state a claim for RICO by identifying the individual Defendants and their role as knowing participants in the scheme. They argue that a plaintiff need only show the use of mail or wire in furtherance of a scheme to defraud along with some injury to state a claim for RICO based on mail or wire fraud–something that they aver is clearly the case here where certain Defendants are controlled by the same individuals. They assert that Defendants have completely failed to address their breach of fiduciary duty owed to Plaintiffs particularly in light of statements made prior to entry into the sale agreements. They also argue that the release agreements are unenforceable as the sole consideration offered by Defendants was for rent income or rehabilitation services, which they had already agreed to supply in the sale contracts. Plaintiffs insist that, because several Defendants are controlled by the same individuals, it would be nonsensical to require Plaintiffs to pursue claims against each entity in separate fora pursuant to separate forum selection or arbitration provisions in the separate agreements entered into.

In reply, Property Defendants argue that Plaintiffs' RICO arguments miss the mark badly, as they do not respond to the issues Defendants raised regarding the complaint's shortcomings, but instead resort to a superficial treatment of the law. They also argue that the court should disregard Plaintiffs' recitation of the contents of a sales

DVD purportedly containing the pitch used to induce Plaintiffs to participate in the real estate transactions because it is extrinsic to the complaint. Defendants claim that it is irrelevant whether some Property Defendant entities are controlled by the same individuals who control Lending Defendant entities. Neither does the business relationship create fiduciary duties in Defendants, they contend, and even if it did, this would not preclude enforcement of the choice of jurisdiction provisions. Property Defendants also claim that Plaintiffs' view that the preexisting duty rule precludes enforcement of the settlement agreements is misguided since the court should not inquire into the adequacy of consideration, the sales were made "as is," and the agreements expressly in writing disclaimed any warrantees.

## B. JGI

Plaintiffs' only claims against JGI are for civil RICO, as JGI is alleged to have purchased then rehabilitated houses and then sold them to Property Defendants before the latter passed them on to Plaintiffs. Plaintiffs base their RICO theory on JGI's conduct being aimed toward the commission of wire or mail fraud. JGI argues that Plaintiffs have completely failed to allege the elements of a RICO claim against them and instead have resorted to impermissible, generalized "shotgun" pleading. Plaintiffs respond that the allegations within the Second Amended Complaint are indeed sufficient to state a claim against JGI as participants in a RICO organization, especially when combined with evidence of their active role in the scheme in the form of an online YouTube video and records indicating that JGI has sold properties directly to individuals who participated in the buying summit operated by other Defendants. They also contend that Defendant has

failed to address controlling precedent and essentially admits to the truth of the allegations regarding the structure of the alleged racketeering scheme. In reply, JGI insists that the court should not consider the new evidence as it is external to the complaint, and the evidence is irrelevant in any case. It also argues that Plaintiffs' reading of case law is misguided insofar as it would allow them to plead without requisite specificity.

## II. STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for failure to state a claim upon which relief may be granted. Under the Rule, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pleaded factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). This standard requires more than bare assertions of legal conclusions. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

However, to survive a motion to dismiss, a complaint must provide sufficient facts to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) Additionally, on a motion to dismiss, a court is usually limited to the complaint and attached exhibits, but it may also consider "public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Erie County v. Morton Salt*, *Inc.*, 702 F.3d 860, 863 (6th Cir. 2012) (quoting *Bassett v. Nat'l Coll. Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008)).

Federal Rule of Civil Procedure 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The Sixth Circuit has "further interpreted Rule 9(b) to require that a plaintiff allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (internal quotations omitted).

### III. DISCUSSION

### A. Property Defendants

Plaintiffs who transacted with Property Defendants all agreed to exclusive jurisdiction in the courts within the state of Utah, and that plainly disposes of the matter before this court. It appears that all Plaintiffs who transacted with Property Defendants

agreed to either of the following provisions:

> GOVERNING LAW AND JURISDICTION: This contract shall be governed by the laws of the State of Utah. Jurisdiction shall lie exclusively with the courts within the State of Utah.

(*See, e.g.*, Dkt. #43-7, Pg. ID 3086.)

> UTAH LAW GOVERNS; JURISDICTION AND VENUE: This Agreement shall be governed by, and construed in accordance with applicable Utah Law, without reference to the conflicts of laws principle. Any litigation between the parties shall take place in the applicable courts located in Utah County, Utah, which state and federal courts shall have exclusive jurisdiction over this Agreement, and the parties expressly consent to such jurisdiction and venue.

(*See, e.g.*, Dkt. #43-17, Pg. ID 3135.)

Michigan law supports enforcement of the choice of law provisions. The court in

*Turcheck v. Amerifund Fin., Inc.*, explained that "assuming that certain exceptions do not

apply, Michigan courts will enforce an express forum-selection clause as written." 272

Mich. App. 341, 345, 725 N.W.2d 684, 688 (2006). Those exceptions are embodied in

MCL § 600.745(3):

> (3) If the parties agreed in writing that an action on a controversy shall be brought only in another state and it is brought in a court of this state, the court shall dismiss or stay the action, as appropriate, unless any of the following occur:
>
> > (a) The court is required by statute to entertain the action.
> >
> > (b) The plaintiff cannot secure effective relief in the other state for reasons other than delay in bringing the action.
> >
> > (c) The other state would be a substantially less convenient place for the trial of the action than this state.
> >
> > (d) The agreement as to the place of the action is obtained by misrepresentation, duress, the abuse of economic power, or

other unconscionable means.

(e) It would for some other reason be unfair or unreasonable
to enforce the agreement.

MCL § 600.745(3). "A party seeking to avoid the enforcement of a forum-selection clause bears a 'heavy burden' of proving that one of the exceptions set forth in MCL § 600.745(3) applies." *Kuhlman v. TDP Capital Access, LLC*, No. 291348, 2010 WL 2793565, at *5 (Mich. Ct. App. July 15, 2010).

None of the recited exceptions apply in this case. Just as with the arbitration provisions discussed in this court's previous orders, assuming *arguendo* that the broader sales contracts were the result of fraud, Plaintiffs have not carried their "heavy burden" of showing that "the agreement as to the place of the action" (*i.e.*, the venue provision) was obtained improperly. *See Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006) ("Unless there is a showing that the alleged fraud or misrepresentation induced the party opposing a forum selection clause to agree to inclusion of that clause in a contract, a general claim of fraud or misrepresentation as to the entire contract does not affect the validity of the forum selection clause.").

Convenience, unfairness, or unreasonableness do not appear to be significant considerations here, as the vast majority of Plaintiffs are located outside of Michigan. Nothing suggests that courts located within Utah will be unable to provide Plaintiffs with relief, nor that this particular court is required by statute to hear the action. "A freely-negotiated forum-selection provision that is not unreasonable or unjust 'does not offend due process.'" *In re Trade Partners, Inc., Inv'rs Litig.*, 627 F. Supp. 2d 772, 778

(W.D. Mich. 2008) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 14, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Indeed, the provisions here appear eminently reasonable in light of the fact that Plaintiffs were operating largely through corporate entities organized under the laws of Utah. *See Preferred Capital, Inc.*, 453 F.3d at 721 ("A forum selection clause contained in an agreement in connection with an arm's length commercial transaction between two business entities is valid and enforceable."). Thus, the enforcement of these provisions is consistent with Michigan law and due process.

Plaintiffs cite to no law that would allow any Plaintiff, to the extent that they exist, who did not contract directly with a given Property Defendant to sustain claims against that Property Defendant for breach of fiduciary duty, fraud, or RICO. Indeed much of the complaint's allegations concern the acts or omissions of "Defendants" generally, despite the fact that nearly two dozen separate Defendants are named. Confronted with similar pleading strategy, the court in *Kerrigan v. ViSalus, Inc.*, stated that "[t]hese 'shotgun' allegations of general misconduct by a group of thirty-one different Defendants are not sufficient to state RICO claims against each of them. 112 F. Supp. 3d 580, 601 (E.D. Mich. 2015) (citing *State Farm Mut. Auto. Ins. Co. v. Universal Health Group, Inc.*, No. 1410266, 2014 WL 5427170, at *2–3 (E.D. Mich. Oct. 24, 2014)). The fraud and breach of fiduciary duty claims fair no better under the circumstances, especially in light of the forum selection clauses that they would frustrate. Even setting aside any applicable settlement agreements, those claims for fraud, RICO, or fiduciary breach by Plaintiffs who *did* contract with Property Defendants are governed by the above provisions, which are broadly drafted.

This court reaches a conclusion contrary to that endorsed in *Snider v. Lone Star Art Trading Co.*, which held that a forum selection clause was unenforceable as to RICO claims because the applicable statute indicated that plaintiffs could bring suit in the federal district court where the transactions occurred. 659 F. Supp. 1249, 1258 (E.D. Mich.), *on reconsideration*, 672 F. Supp. 977 (E.D. Mich. 1987). It seems that decision has been superseded by more recent Supreme Court precedent. Subsequently, the Supreme Court in construing a similar provision held that it was "clear, however, that this mere 'contemplation' of suit in any competent court does not guarantee suit in all competent courts, disabling the parties from adopting a reasonable forum-selection clause." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 102, 132 S. Ct. 665, 671, 181 L. Ed. 2d 586 (2012); *see also Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 227, 107 S. Ct. 2332, 2338, 96 L. Ed. 2d 185 (1987) (holding that RICO claims are subject to mandatory arbitration provisions). The provisions here are reasonable and enforceable against all of Plaintiffs' claims, which arise out of their transactions with Property Defendants. Having concluded that the forum selection clauses are enforceable, the court will not reach the remaining merits of Defendants' motion. Therefore, the court will grant dismissal. Unlike the court's prior grants of dismissal in light of arbitration provisions, this time it does so with prejudice. However, the court will not award fees.

## B. JGI

Plaintiffs' allegations against JGI are fatally deficient. As JGI points out, the only thing that it is specifically alleged to have done is purchase, rehabilitate, and sell properties to Property Defendants and other unspecified "final buyers of the Buying

Summit Fraudulent Enterprise." (Dkt. # 37, Pg. ID 1955.) The only reasonable conclusion to be drawn from the complaint about these "final buyers" is that none of them are Plaintiffs. The very next sentence concedes that "[n]one of the Plaintiffs are in contractual privity with Defendant John Graham, Inc. . . ." (*Id.*) As the court assumes the truth of these allegations on a motion to dismiss, the new evidence that Plaintiffs ask the court to consider purporting to establish transactions to the "final buyers" is irrelevant.

To plead a claim for RICO relating to wire or mail fraud a Plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)), along with allegations of "(1) a scheme to defraud, and (2) use of the mails [or wires] in furtherance of the scheme" complying with the specificity requirements of Federal Rule 9(b) as to the fraud, *id.* (citing *United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005)).

It cannot be disputed that Plaintiffs have failed to meet that standard here, where all of the alleged racketeering activity (*i.e.*, the purported wire or mail fraud) is alleged generally regarding conduct of "Defendants." Taking Plaintiffs' generalized allegations at face value results in apparent contradictions. By way of illustration, Plaintiffs simultaneously allege that they are not in privity with JGI but also that language within sales contracts had been "drafted by the Defendants" so as to frustrate Plaintiffs' ability to enforce their rights, and that "Defendants" owed them fiduciary duties because of their statements inducing Plaintiffs to rely on their business acumen. One paragraph reads

that "Virtually all of the homes offered for sale by Defendants at the Buying Summit and otherwise had invariably been recently purchased prior to resale to Plaintiffs by agents of the Defendants for Defendants' own account at below market prices and/or at distress sale prices, often by Defendant John Graham Inc., a fact well known in advance by Defendants and which was, in fact, an essential aspect of their scheme to defraud." (Dkt. #37, Pg. ID 1977.) If the court is to charitably read JGI into every invocation of the term "Defendants" in the complaint, this sentence suggests that JGI was buying and selling properties to itself. As such, the complaint is either devoid of the necessary specificity to make out the requisite claims for a pattern of mail or wire fraud by JGI, or it is hopelessly nonsensical.

This conclusion is not upset by Plaintiffs' citations to *In re ClassicStar Mare Lease Litig.*, which involved a scheme to defraud investors in a mare leasing business by misrepresenting the number of mares that were available. 727 F.3d 473, (6th Cir. 2013). There, the court concluded that on summary judgment sufficient evidence had been presented of a parent company's owners' intent to defraud investors through its own controlled subsidiary "[c]onsidering the evidence of [parent company]'s involvement in the Mare Lease Program, the knowledge of [parent company] executives about the massive overselling of mare lease interests, [parent company]'s participation in the creation of [an investment vehicle allowing victims to combine their interests], and [parent company] executives' financial and operational control over [subsidiary.]" *Id.* at 487. Plaintiffs' allegations do not contemplate anywhere near same the level of involvement in the supposed fraudulent scheme by JGI. A YouTube video purportedly

showing a salesman outside of JGI's facilities does not change this calculus. As Plaintiffs have completely failed to allege that JGI had the requisite intent to commit wire or mail fraud, the RICO claim is deficient and will be dismissed.

Plaintiffs' problem is not merely one of insufficient specificity that may be cured by amendment to add more detail about the facts surrounding some fraudulent statement as would normally warrant dismissal without prejudice. Instead, Plaintiffs' claims against JGI appear fundamentally moribund. Reading the complaint with an eye to the conduct specifically attributed to JGI reveals that Plaintiffs' allegations are indistinguishable from a description of a completely legitimate real estate enterprise buying "distressed" properties for a low price and then selling them off to purchasers at a higher price. Those purchasers in turn hope that the future will hold for them a higher price still. Nothing about such an operation is illegal or even suspicious. The difference between the higher price at which JGI sold the properties and the lower price at which JGI purchased them constitutes the revenue—the lifeblood of any business that allows it to operate. Indeed it is only after the business costs (*e.g.*, wages, capital investments, leases, litigation expenses, etc.) were subtracted from that revenue that JGI might have hoped to find for itself some kernel of profit, the raison d'être of any commercial undertaking.

Thus, dismissal will be with prejudice, but the court will stop short of awarding fees here as well.

## IV. CONCLUSION

IT IS ORDERED that Property Defendants' Motion to Dismiss Second Amended Complaint (Dkt. #43) is GRANTED.

IT IS ORDERED that JGI's Motion to Dismiss Second Amended Complaint (Dkt.

#45) is GRANTED. A separate judgment shall issue.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:   July 6, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record on
this date, July 6, 2017, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(810) 292-6522